FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 02, 2016

SEAN F. McAVOY, CLERK

1
2
3
4
5
6
7
8
9
10
11
12
13
14

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BRENDA BRYAN,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>Defendant. | No. 4:15-CV-05122-JTR<br><br>ORDER GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

15    **BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF

16  No. 14, 18.  Attorney Cory J. Brandt represents Brenda Bryan (Plaintiff); Special

17  Assistant United States Attorney Ryan Lu represents the Commissioner of Social

18  Security (Defendant).  The parties have consented to proceed before a magistrate

19  judge. ECF No. 7.  After reviewing the administrative record and briefs filed by the

20  parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and

21  **DENIES** Plaintiff's Motion for Summary Judgment.

22                                       **JURISDICTION**

23    Plaintiff filed an application for Supplemental Security Income (SSI) on

24  August 22, 2011, alleging disability since May 15, 2003, due to bipolar, post-

25  traumatic stress disorder (PTSD), depression, anxiety, Hashimoto Disease, panic

26  attacks, and asthma.  Tr. 225-231, 305, 355.   The application was denied initially

27  and upon reconsideration. Tr. 157-169, 171-180.  Administrative Law Judge

28  (ALJ) Lori L. Freund held a hearing on October 10, 2013, and heard testimony

from Plaintiff and vocational expert Sharon Welter. Tr. 50-103. At the hearing, Plaintiff was represented by counsel and amended her onset date to August 22, 2011. Tr. 56. The ALJ issued an unfavorable decision on April 4, 2014. Tr. 22-41. The Appeals Council denied review on October 16, 2015. Tr. 1-7. The ALJ's April 4, 2014, decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on December 14, 2015. ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 40 years old at the date of application and the amended date of onset. Tr. 225. Plaintiff completed high school and one year of college in 1994. Tr. 356, 875. She also attended a truck driving training program. Tr. 875. She last worked in September of 2003 as prep cook in a fast food restaurant. Tr. 356-357. Plaintiff reported she stopped working because of her conditions. Tr. 356.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational

ORDER GRANTING DEFENDANT'S MOTION . . . - 2

interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097.  Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

### SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one through four, the burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits.  *Tackett*, 180 F.3d at 1098-1099.  This burden is met once the claimant establishes that physical or mental impairments prevent her from engaging in her previous occupations.  20 C.F.R. § 416.920(a)(4).  If the claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs exist in the national economy which the claimant can perform.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004).  If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made.  20 C.F.R. § 416.920(a)(4)(v).

### ADMINISTRATIVE DECISION

On April 4, 2014, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 22, 2011, the date of application.  Tr. 24.

At step two, the ALJ determined Plaintiff had the following severe

impairments:  Hashimoto's disease; status post-septic arthritis of the left knee with Methicillin-resistant Staphylococcus aureus (MRSA); dermatitis; asthma; mood disorders, not otherwise specified; PTSD; generalized anxiety disorder, not otherwise specified; and personality disorder, not otherwise specified.  Tr. 24.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 24.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined that from August 22, 2011, to October 31, 2012, and from November 1, 2013, to the date of the ALJ decision that she had no exertional limitations, but had the following nonexertional limitations:

> [T]he claimant would need to avoid exposure to airborne particulates, such as fumes, odors, dust, and gases.  The claimant would work best away from the public.  She could have superficial contact with coworkers, but she could not perform tandem tasks.  She is capable of occasional decision-making and judgment making.  She could adapt to occasional changes in the work setting.  She could have occasional supervision.

Tr. 26.  The ALJ identified Plaintiff's past relevant work as cook helper, janitor, rod tape operator, tractor-trailer-truck driver, dump truck driver, and "truck driver, light"  Tr. 39.  The ALJ concluded that for the above-mentioned time period Plaintiff was able to perform her past relevant work as a cook helper, janitor, rod tape operator, dump truck driver, and "truck driver, light" as generally performed.  Tr. 38-39.

The ALJ made a separate residual functional capacity determination for November 1, 2012, to October 31, 2013, finding that Plaintiff retained the capacity to perform light work with the following limitations:

> The claimant was able to lift up to 20 pounds occasionally and 10

ORDER GRANTING DEFENDANT'S MOTION . . . - 4

pounds frequently. The claimant was able to stand/walk four hours in an eight-hour workday and she was able to sit for six hours in an eight-hour workday. She was able to occasionally use her left lower extremity to operate foot controls. She could never climb ladders, ropes, and scaffolds. She could occasionally climb one flight of stairs or less, but she would need the use of a handrail. She could never crawl. She could occasionally balance on even ground. She needed to avoid walking on uneven terrain. She could occasionally stoop and crouch. She could never kneel on the left knee and occasionally kneel on the right knee. The claimant needed to avoid exposure to airborne particulates, such as fumes, odors, dust, and gases. She needed to avoid exposure to hazardous machinery, unprotected heights, and the operational control of moving machinery. The claimant would have needed to work away from the public. She could have had superficial contact with coworkers, but she could not have performed tandem tasks. She was capable of occasional decision-making and judgment making. She could have adapted to occasional changes in the work setting. She could have had occasional supervision.

Tr. 26. The ALJ concluded that for the above-mentioned time period Plaintiff was not able to perform her past relevant work. Tr. 39.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could have performed from November 1, 2012, to October 31, 2013, including the jobs of mail clerk, office helper, and outside deliverer. Tr. 39-40.

The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from August 22, 2011, the date of application, through April 4, 2014, the date of the ALJ's decision. Tr. 41.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly weigh the

opinions of medical sources; (2) failing to properly consider Plaintiff's credibility, (3) failing to make a proper step four determination; and (4) failing to make a proper step five determination.

### DISCUSSION

### A.    Medical Opinions

Plaintiff argues that the ALJ failed to properly consider and weigh the medical opinions expressed by Jan M. Kouzes, Ed.D., Tae-Im Moon, Ph.D., Shruti Aggarwal, M.D., K. Blair Sampson, M.D., and Jack Carpenter, PT, DPT.  ECF No. 14 at 8-14.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician.  *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the first physician.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).  Likewise, when an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons.  *Lester*, 81 F.2d at 830.  When an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for

rejecting the opinion of the examining physician. *Id*. at 830-831.

The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988).

### 1.    Jan M. Kouzes, Ed.D.

On July 22, 2011, Dr. Kouzes completed a Psychological/Psychiatric Evaluation at the request of the Washington Department of Social and Health Services (DSHS), which included a mental status exam. Tr. 875-880. Dr. Kouzes diagnosed Plaintiff with major depressive disorder and panic disorder without agoraphobia. Tr. 877. She opined that Plaintiff had a marked[1] limitation in the abilities to communicate and perform in a work setting with public contact and maintain appropriate behavior in a work setting. Tr. 878. She opined Plaintiff had a moderate[2] limitation in the abilities to learn new tasks, to perform routine tasks without undue supervision, to be aware of normal hazards and take appropriate precautions, and to communicate and perform effectively in a work setting with limited public contact. Tr. 877-878. Dr. Kouzes estimated that Plaintiff would be impaired to the above degree from three months to nine months. Tr. 878.

On February 21, 2013, Dr. Kouzes completed a second Psychological/Psychiatric Evaluation at the request of DSHS, which included a mental status exam. Tr. 1066-1070. Dr. Kouzes gave Plaintiff the same diagnosis as in the prior evaluation. Tr. 1067. Dr. Kouzes opined that Plaintiff would have a

---

[1]Marked is defined as "[v]ery significant interference." Tr. 877.

[2]Moderate is defined as [s]ignificant in[ter]ference." Tr. 877.

marked[3] limitation in the abilities to understand, remember, and persist in tasks by following detailed instructions, to communicate and perform effectively in a work setting, to complete a normal work day and work week without interruptions form psychologically based symptoms, to maintain appropriate behavior in a work setting, and to set realistic goals and plan independently. Tr. 1068. She also opined that Plaintiff would have a moderate[4] limitation in the abilities to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, to learn new tasks, to perform routine tasks without special supervision, to adapt to changes in a routine work setting, to make simple work-related decisions, the be aware of normal hazards and take appropriate precautions, and to ask simple questions or request assistance. *Id*. Dr. Kouzes estimated that Plaintiff would have the above limitations for 12 months. Tr. 1069.

The ALJ gave both of Dr. Kouzes' opinions little weight because (1) she was not a treating provider, (2) she gave only cursory explanations on her evaluation form to support her opinions, (3) she did not administer clinical testing aside from mental status examinations, and (4) her opined cognitive limitations were inconsistent with IQ and memory testing in the record. Tr. 34.

The ALJ's first reason for rejecting Dr. Kouzes' opinions that Dr. Kouzes was not a treating physician, was not a sufficient reason to reject the opinion. An ALJ is to consider the examining relationship and treatment relationship in weighing opinions, 20 C.F.R. § 416.927(c), and to give greater weight to a treating physician over an examining physician, *Orn*, 495 F.3d at 631. However, in this

---

[3]Marked "means a very significant limitation on the ability to perform one or more basic work activity." Tr. 1068.

[4]Moderate "means there are significant limits on the ability to perform one or more basic work activity." Tr. 1068.

ORDER GRANTING DEFENDANT'S MOTION . . . - 8

case there is no opinion from a treating psychologist.  Therefore, this reason is not sufficient to reject Dr. Kouzes' opinion while giving greater weight to another examining psychologist.  However, this error is harmless because the ALJ has provided other legally sufficient reasons for rejecting Dr. Kouzes' opinions.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

The second reason the ALJ provided for rejecting Dr. Kouzes' opinions, that she gave only cursory explanations on her evaluation form to support her opinions, is legally sufficient.  An ALJ can reject an opinion that is brief, conclusory, and inadequately supported by clinical findings.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  Additionally, ALJ my reject check-off reports that do not contain any explanation of the basis of their conclusions.  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  However, unexplained check-off forms that are based on significant experience with the claimant and supported by treatment records should not be rejected simply because of their format.  *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014).

Here, Dr. Kouzes' July 2011 opinion was on a check-off form with observations noted in three of the eight limitations addressed.  Tr. 877-878.  Two of the three observations were for abilities in which Plaintiff had no limitation or only a mild limitation.  Tr. 877.  The third observation was that Plaintiff could perform her activities of daily living as an explanation for a moderate limitation in the ability to perform routine tasks without undue supervision.  Tr. 878.  However, a doctor's observation that Plaintiff is capable of performing her activities of daily living is not support for a moderate limitation.  Additionally, the opinion was not supported by significant experience with Plaintiff.  It was based on a one-time Mental Status Exam and the review of a DSHS intake form.  Tr. 875, 877, 879-880.  Therefore, the ALJ's finding that Dr. Kouzes only provided "cursory

1    explanations" is supported by substantial evidence and was a specific and
2    legitimate reason to reject the July 2011 opinion.

3    Dr. Kouzes' February 2013 opinion was a check-off form void of any
4    explanation for the limitations indicated. Tr. 1068. She did not have any
5    significant experience with Plaintiff as she was only an examining psychologist
6    who had seen Plaintiff almost two years prior and had not participated in treatment.
7    Additionally, her opinion was based on a mental status exam and a review of Dr.
8    Moon's August 2012 DSHS Psychological Evaluation, which the ALJ also
9    rejected. Tr. 1066, 1069-1070. Therefore, this is a specific and legitimate reason
10   to reject the opinion.

11   The ALJ's third reason for rejecting Dr. Kouzes' opinions, that she did not
12   administer clinical testing aside from mental status examinations, is legally
13   sufficient. As discussed below, the clinical testing that has been performed is
14   inconsistent with Dr. Kouzes' opinions. Dr. Kouzes' did not review any of the
15   clinical testing in Plaintiff's file as a part of either evaluation, nor did she perform
16   her own clinical testing. Tr. 875-880, 1066-1070. Therefore, the ALJ's decision
17   to give greater weight to the opinion of Dr. Dougherty because he provided clinical
18   testing results, Tr. 34, 849-850, over Dr. Kouzes' opinions is acceptable as Dr.
19   Dougherty based his opinion on more objective testing. Therefore, this is a
20   specific and legitimate reason to reject the opinions.

21   The ALJ's fourth reason for rejecting Dr. Kouzes' opinions, that the
22   cognitive limitations were inconsistent with the IQ and memory testing, is legally
23   sufficient. Inconsistency with the majority of objective evidence is a specific and
24   legitimate reason for rejecting physician's opinions. *Batson*, 359 F.3d at 1195.
25   The record shows that in 1986, Plaintiff had an average full scale IQ score of 103
26   on the Wechsler Intelligence Scale for Children. Tr. 383-384. In March of 2007,
27   she had an average full scale IQ score of 98 on the Wechsler Adult Intelligence
28   Scale-III (WAIS-III). Tr. 541, 550, 552. In October of 2010, Plaintiff scored in

ORDER GRANTING DEFENDANT'S MOTION . . . - 10

the average range of intelligence on a Kaufman Brief Intelligence Test (K-BIT). Tr. 849. Having an average IQ score is inconsistent with Dr. Kouzes' finding of cognitive limitations and meets the specific and legitimate standard.

Additionally, Plaintiff scored average or above average on the Wechsler Memory Scale-III (WMS-III) in March of 2007 and October of 2010. Tr. 550, 560, 849. This is inconsistent with Dr. Kouzes' findings of limitations associated with memory loss and meets the specific and legitimate standard. The Court is aware that in February of 2012, Plaintiff was administered the Digit Span subtest of the Wechsler Adult Intelligence Scale-IV (WAIS-IV), in which she scored in the low average range. Tr. 897. CeCelia Cooper, Ph.D. stated that this showed Plaintiff's short term memory to be impaired, but not her immediate memory. Tr. 898. However, the ALJ rejected Dr. Cooper's opinion because it was based on a single subtest of the WAIS-IV and, instead, relied upon Dr. Dougherty's opinion which was based on the entire WMS-III. Tr. 34. The Digit Span subtest is one of two subtests in the Working Memory index administered in the WAIS-IV.[5] The WMS-III consists of seven index scores drawn from eleven subtests focused on memory. Tr. 560-562. Therefore, the ALJ's decision to rely on a conclusion drawn from more comprehensive testing over a single subtest meets the specific and legitimate standard required to support a rejection of Dr. Cooper's opinion and, in turn, Dr. Kouzes' opinion as well.

---

[5]The WAIS-IV consists of four index scales, including Verbal Comprehension, Perceptual Reasoning, Working Memory, and Processing Speed. The Working Memory index scale is calculated based on two subtests, Digit Span and Arithmetic. Gary L. Canivez, Jason M. Nelson & Marley W. Watkins, *Structural and Incremental Validity of the Wechsler Adult Intelligence Scale-Fourth Edition with a Clinical Sample*, 25 Psychological Assessment 618, 620 (2013), http://edpsychassociates.com/Papers/WAIS-IVclinical(2013).pdf.

ORDER GRANTING DEFENDANT'S MOTION . . . - 11

1    In conclusion, there was no harmful error in the ALJ's decision to reject Dr.

2    Kouzes' opinions.

3        **2.    Tae-Im Moon, Ph.D.**

4        On August 16, 2012, Dr. Moon completed a Psychological/Psychiatric

5    Evaluation form for DSHS following a clinical interview and a mental status exam.

6    Tr. 927-931.  Dr. Moon opined that Plaintiff had a marked limitation in the abilities

7    to understand, remember, and persist in tasks by following detailed instructions, to

8    learn new tasks, to adapt to changes in a routine work setting, to communicate and

9    perform effectively in a work setting, to complete an normal work day and work

10   week without interruptions form psychologically based symptoms, to maintain

11   appropriate behavior in a work setting, and to set realistic goals and plan

12   independently.  Tr. 929.  Dr. Moon opined that Plaintiff had a moderate limitation

13   in the abilities to perform activities within a schedule, maintain regular attendance,

14   and be punctual within customary tolerances without special supervision, to

15   perform routine tasks without special supervisions, to make simple work-related

16   decisions, to be aware of normal hazards and take appropriate precautions, and to

17   ask simple questions or request assistance.[6]  *Id*.  Dr. Moon stated that he would

18   expect the above limitations to be present from 18 months to an undeterminable

19   number of months.  Tr. 930.

20       The ALJ gave Dr. Moon's opinion "little weight" because (1) the opinion

21   was based on a one time evaluation by an examining provider, (2) the opinion was

22   based on Plaintiff's self-reports and a mini-mental status examination, (3) the

23   opinion was inconsistent with objective testing, and (4) the opinion was

24   inconsistent with Plaintiff's activities.  Tr. 35-36.

25       The ALJ's first reason for rejecting Dr. Moon's opinion was not legally

26   _____

27       [6]The definitions of marked and moderate limitations are the same definitions

28   used in Dr. Kouzes' February 2013 opinion.  Tr. 929.

ORDER GRANTING DEFENDANT'S MOTION . . . - 12

sufficient.  As discussed above, the fact that the opinion was by an examining provider is not a legally sufficient reason to reject an examining physician's opinion in favor of another examining physician.  However, any error resulting from this reason is harmless.

The ALJ's second reason for rejecting Dr. Moon's opinion, that it was based on Plaintiff's self-reports and a mini-mental status examination, is a legally sufficient reason the reject the opinion in favor of Dr. Dougherty's opinion.  Dr. Moon did not review any other evaluations or treatment notes as part of his evaluation; the medical history he considered were Plaintiff's statements.  Tr. 927.  Dr. Moon then completed a mental status exam.  Tr. 930-931.  This is in contrast to Dr. Dougherty's opinion, which was formed after an interview, a review of records provided by her child's social worker, the Minnesota Multiphasic Personality Inventory-2, Millian Clinical Multiaxial Inventory-III, Rorschach Test, K-BIT, Trauma Symptoms Inventory, and WMS-III.  Tr. 855-861.  Substantial evidence supports that Dr. Dougherty's opinion was based on more objective evidence than Dr. Moon's opinion.  Therefore this is a specific and legitimate reason to reject Dr. Moon's opinion.

The ALJ's third reason for rejecting Dr. Moon's opinion, that it was inconsistent with objective evidence, is legally sufficient.  Inconsistency with the majority of objective evidence is a specific and legitimate reason for rejecting physician's opinions.  *Batson*, 359 F.3d at 1195.  The ALJ noted that Plaintiff's IQ tests and WMS-III tests, discussed in detail above, show that Plaintiff had no significant limitation in her cognitive abilities.  Tr. 35-36.  This is a specific and legitimate reason to reject Dr. Moon's opinion.

The ALJ's fourth reason for rejecting Dr. Moon's opinion, that it was inconsistent with Plaintiff's activities, is legally sufficient.  The ALJ noted that Plaintiff's lack of cognitive limitations is further supported by her reported activities of beading, woodworking, selling items on Craig's list, helping her friend

ORDER GRANTING DEFENDANT'S MOTION . . . - 13

shop, cook and run errands, and reading for hours; therefore, Plaintiff's activities were inconsistent with Dr. Moon's cognitive limitations. Tr. 36. A claimant's testimony about her daily activities may be seen as inconsistent with the presence of a disabling condition. *See Curry v. Sullivan,* 925 F.2d 1127, 1130 (9th Cir. 1990). While the ALJ found Plaintiff to be less than fully credible concerning the intensity, persistence, and limiting effects of her symptoms, he did so by crediting her testimony about her daily activities. *See infra.* Therefore, this is a legally sufficient reason for rejecting Dr. Moon's opinion.

The ALJ did not commit any harmful legal error in her treatment of Dr. Moon's opinion.

### 3.    Shruti Aggarwal, M.D.

On March 12, 2013, Dr. Aggarwal stated in a patient plan that Plaintiff should "[a]void lifting heavy weight," and "[a]dvised bed rest in acute cases," referring to Plaintiff's left knee. Tr. 955.

The ALJ gave Dr. Aggarwal's March 12, 2013, statements "little weight" because (1) the opinion was based on Plaintiff's complaints of joint pain, (2) the limitations given were vague, and (3) it was inconsistent with a normal examination on March 5, 2013. Tr. 38.

On March 4, 2013, Dr. Aggarwal completed an evaluation and a DSHS Physical Functional Evaluation form. Tr. 1072-1078. On the DSHS form, Dr. Aggarwal indicated that Plaintiff was "[s]everly limited" meaning that she was "[u]nable to meet the demands of sedentary work." Tr. 1074. He stated that it was difficult to comment on how long the limitation would last and did not complete that portion of the form. *Id.*

The ALJ gave the opinion expressed on this DSHS form "little weight" because (1) it was inconsistent with a normal evaluation on March 5, 2013, and (2) it was inconsistent with Plaintiff's testimony. Tr. 38.

Plaintiff challenges the weight the ALJ gave to the opinion in the March 4,

ORDER GRANTING DEFENDANT'S MOTION . . . - 14

2013, DSHS form, but only presents challenges to the reasons the ALJ provided for rejecting the March 12, 2013, statements. ECF No. 14 at 11. Despite Plaintiff's somewhat mismatched challenges, the ALJ provided legally specific reasons for rejecting both of Dr. Aggarwal's opinions.

The ALJ's first reason for rejecting the March 12, 2013, statements, that it was based on Plaintiff's complaints of joint pain, is legally sufficient. A doctor's opinion may be discounted if it relies on a claimant's unreliable self-report. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Tommasetti*, 533 F.3d at 1041. But the ALJ must provide the basis for her conclusion that the opinion was based on a claimant's self-reports. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Here, the ALJ concluded that the opinion was based on Plaintiff's reports of joint pain because there were no physical examination results accompanying the opinion. Tr. 38. The ALJ provided a rationale for her conclusion that the opinion was based on Plaintiff's self-reports and not on objective evidence. Therefore, this reason meets the specific and legitimate reason.

The ALJ's second reason for rejecting the March 12, 2013, statements, that the limitations given were vague, is legally sufficient. The phrases "[a]void lifting heavy weight," and "[a]dvised bed rest in acute cases" are vague as they are not presented in occupational terms. It leaves what constitutes "heavy weight" and the frequency of "acute cases" undefined and unable to put into a residual functional capacity analysis. This is a specific and legitimate reason to reject the opinion.

The ALJ's third reason for rejecting the March 12, 2013, statements, that the opinion was inconsistent with a normal examination on March 5, 2013, that stated there were normal range of motion, muscle strength, and stability in all extremities, is legally sufficient. While, there is no evaluation performed on March 5, 2013, there is an evaluation performed by Dr. Aggarwal on March 4, 2013, in which he stated "[n]ormal range of motion, muscle strength, and stability in all extremities

with no pain on inspection." Tr. 1077. Therefore, it is obvious that the ALJ's reference to the March 5, 2013, evaluation is a reference to Dr. Aggarwal's March 4, 2013, evaluation and simply a scribner's error. The ALJ may reject a medical opinion that is "inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. This evaluation contained normal findings throughout the physical evaluation. Tr. 1077-1078. Therefore the ALJ's determination is supported by substantial evidence and meets the legitimate and specific standard.

The March 4, 2013, evaluation was also the ALJ's first reason for rejecting the March 4, 2013, opinion. Tr. 38. Again, since the evaluation contained only normal findings upon physical evaluation, Tr. 1077-1078, the ALJ's determination that these findings were inconsistent with Dr. Aggarwal's opinion that Plaintiff was "severely limited" is supported by substantial evidence and is legally sufficient under *Thomas*.

The ALJ's second reason for rejecting the March 4, 2013, opinion, that it was inconsistent with Plaintiff's testimony, is legally sufficient. The claimant's testimony about her daily activities may be seen as inconsistent with the presence of a disabling condition. *See Curry*, 925 F.2d at 1130. Plaintiff testified that she was able to be on her feet standing and walking for a total of four to five hours with breaks since January 2013. Tr. 62-63. This is inconsistent with Dr. Aggarwal's opinion that she would be unable to meet the demands of sedentary work, which includes the ability to walk or stand for brief periods. Therefore, this is a specific and legitimate reason to reject the opinion.

The ALJ did not error in her treatment of Dr. Aggarwal's opinion.

**4.     K. Blair Sampson, M.D.**

In January of 2013,[7] Dr. Sampson completed a DSHS Physical Functional

---

[7]The date Dr. Sampson indicated on the form was January 3, 2011, however, the Court assumes this was in error and that the examination took place in January

Evaluation form in which he opined that Plaintiff was "[s]everly limited," which is defined as "[u]nable to meet the demands of sedentary work." Tr. 1047-1049. He indicated this level of impairment would last three months with available medical treatment. Tr. 1049.

The ALJ gave Dr. Sampson's opinion "little weight" because (1) it was inconsistent with a normal evaluation on March 5, 2013, and (2) it was inconsistent with Plaintiff's testimony. Tr. 38.

These reasons are supported by substantial evidence and are legally sufficient as discussed above in reference to Dr. Aggarwal's March 4, 2013, opinion, which also ranked Plaintiff as "severely limited."

### 5.    Jack Carpenter, PT, DPT

On January 18, 2013, Mr. Carpenter completed a DSHS Physical Functional Evaluation form. Tr. 1038-1040. Mr. Carpenter opined that Plaintiff was limited to sedentary work, defined as "[a]ble to lift 10 pounds maximum and frequently lift or carry lightweight articles. Able to walk or stand only for brief periods." Tr. 1040. Mr. Carpenter stated that he expected the above limitation to persist for six months with available medical treatment. *Id.*

The ALJ gave Mr. Carpenter's opinion "little weight" because (1) it was inconsistent with a normal evaluation on March 5, 2013, and (2) it was inconsistent with Plaintiff's testimony. Tr. 38.

Unlike Dr. Kouzes, Dr. Moon, Dr. Aggarwal, and Dr. Sampson, Mr. Carpenter is not an acceptable medical source; instead, he is considered an "other source." *See* 20 C.F.R. § 416.913(d). Generally, the ALJ should give more weight to the opinion of an acceptable medial source than to the opinion of an "other

of 2013 because the DSHS worker sent the form on December 18, 2012, Tr. 1049, and Plaintiff gave consent for Dr. Sampson to release medical information to DSHS on January 11, 2013, Tr. 1047.

source," such as a therapist.  20 C.F.R. § 416.913(d).  An ALJ is required, however, to consider evidence from "other sources," 20 C.F.R. § 416.913(d); S.S.R. 06-03p, "as to how an impairment affects a claimant's ability to work," *Sprague*, 812 F.2d at 1232.  An ALJ must give reasons that are specific and germane to each "other source" to discount their opinions.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *Stout v. Comm'r of Soc. Sec. Admin*., 454 F.3d 1050, 1053-1054 (9th Cir. 2006).

First, as discussed at length above, the March 4, 2013, evaluation revealed all normal findings on physical examination.  This is inconsistent with a limitation to sedentary work.  Therefore, this is a legally sufficient reason to reject Mr. Carpenter's opinion.

Second, the ability to stand or walk for four or five hours with breaks, as Plaintiff testified, Tr. 62-63, is not inconsistent with the ability to perform sedentary work, which requires the ability to walk or stand only for brief periods.  However, since the ALJ's first reason meets the germane standard, any error resulting from the ALJ's second reason is harmless.  *See Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

## B.    Credibility

Plaintiff contests the ALJ's adverse credibility determination in this case.  ECF No. 14 at 14-17.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester*, 81 F.3d at 834.  "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what

evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff less than fully credible concerning the intensity, persistence, and limiting effects of her symptoms because (1) Plaintiff's daily activities were inconsistent with her allegations, (2) the objective medical evidence was inconsistent with the severity of alleged mental health impairments, and (3) the alleged mental health impairments were inconsistent with the limited mental health treatment sought during the relevant time period.  Tr. 28-29.

The ALJ's first reason for finding Plaintiff less than fully credible, that Plaintiff's daily activities were inconsistent with her alleged impairments, is legally sufficient.  A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict her other testimony, or (2) "the claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  A claimant need not be "utterly incapacitated" to be eligible for benefits.  *Fair*, 885 F.2d at 603.

Here, the ALJ summarized Plaintiff's activities, including her ability to read romance novels three to four hours per day, do beadwork and make dream catchers, use a computer to sell items on Craig's list, take walks because she felt claustrophobic, run errands for a visually impaired friend, and ride her bike.  Tr. 32-33.  The ALJ determined that despite Plaintiff's testimony to the contrary, these activities showed Plaintiff could interact socially , she was able to understand, remember, and carryout tasks, she could maintain concentration, persistence, and pace, and she had regained some strength in her left knee.  Tr. 33.  The Court finds that the ALJ's conclusion that Plaintiff's activities were inconsistent with her testimony is supported by substantial records and meets the specific, clear and convincing standard.

The ALJ's second reason for finding Plaintiff less than fully credible, that

the objective medical evidence was inconsistent with the severity of mental health limitations alleged, is legally sufficient.  Objective medical evidence is a "relevant factor" in determining the severity of claimant's impairments and their disabling effects, it cannot serve as the sole ground for rejecting a claimant's credibility. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  Here, the ALJ noted that throughout treatment records, Plaintiff reported a head injury in 2003 resulting in memory difficulties, however, the intelligence and memory testing showed no cognitive or memory limitations.  Tr. 28-29.  As discussed in detail above, the objective testing does not support Plaintiff's reports of cognitive and memory limitations.  As such, the ALJ's determination that these allegations are not supported by substantial evidence meets the specific, clear and convincing standard.

The ALJ's third reason for finding Plaintiff less than fully credible, that her lack of mental health treatment during the relevant time period was inconsistent with her alleged impairments, is not a legally sufficient reason.  Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints.  20 C.F.R. §§ 404.1530, 416.930; *Fair*, 885 F.2d at 603.  But, a claimant's failure to follow a course of treatment may be excused if the claimant cannot afford the treatment.  *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).

The ALJ failed to consider Plaintiff's ability to afford treatment when making her adverse credibility determination.  Therefore, this reason does not meet the specific, clear and convincing standard.  However, any error resulting from this determination would be harmless considering the ALJ provided other legally sufficient reasons for rejecting Plaintiff's credibility.  See *Carmickle v. Comm'r., Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were invalid); *Batson*, 359 F.3d at 1197 (affirming a credibility

ORDER GRANTING DEFENDANT'S MOTION . . . - 20

finding where one of several reasons was unsupported by the record); *Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

## C.    Step Four

Plaintiff challenges the ALJ's step four determination, stating that the ALJ failed to meet the requirements of S.S.R. 82-62.  ECF No. 14 at 17-19.

The claimant has the burden of proving she can no longer perform past relevant work.  20 C.F.R. §§ 416.912(a), 416.920(f); *Tackett*, 180 F.3d at 1098-1099.  To find that a claimant has the capacity to perform a past relevant job, the ALJ must make the following findings of fact: (1) the individual's residual functional capacity; (2) the physical and mental demands of the past job/occupation; (3) that the individual's residual functional capacity would permit a return to her past job or occupation.  S.S.R. 82-62.

First Plaintiff argues that the ALJ erred by failing to include all of Plaintiff's limitations in the residual functional capacity determination by rejecting the various treating and examining providers discussed above.  ECF No. 14 at 18.  However, the Court finds that the ALJ provided legally sufficient reasons for rejecting these opinions.  Therefore, the ALJ did not error in her residual functional capacity determination.

Second, Plaintiff argues that the ALJ failed to identify the specific demands of Plaintiff's past relevant work.  ECF No. 14 at 18.  Plaintiff's argument is one sentence long and is unsupported.  *Id*.  The court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief.  *See Carmickle*, 533 F.3d at 1161 n.2.  The Ninth Circuit explained the necessity for providing specific argument:

The art of advocacy is not one of mystery.  Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court.  Particularly on appeal, we have held firm against considering arguments that are not briefed.  But the term "brief" in the appellate

context does not mean opaque nor is it an exercise in issue spotting. However much we may importune lawyers to be brief and to get to the point, we have never suggested that they skip the substance of their argument in order to do so.  It is no accident that the Federal Rules of Appellate Procedure require the opening brief to contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."  Fed. R. App. P. 28(a)(9)(A).[8]  We require contentions to be accompanied by reasons.

*Independent Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003). Moreover, the Ninth Circuit has repeatedly admonished that the court will not "manufacture arguments for an appellant" and therefore will not consider claims that were not actually argued in appellant's opening brief.  *Greenwood v. Fed. Aviation Admin*., 28 F.3d 971, 977 (9th Cir. 1994).  Because Plaintiff failed to provide adequate briefing, the Court declines to consider the issue.

Third, Plaintiff argued that the ALJ failed to properly compare the specific demands of her past relevant work with her specific functional limitations by only relying on the vocational expert's testimony.  ECF No. 14 at 18-19.

The Ninth Circuit has held that requiring the ALJ to make specific findings on the record at each phase of the step four analysis allows for meaningful judicial review.  *Pinto v. Massanari*, 249 F.3d at 847.  When the ALJ "makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the [vocational expert's] head, we are left with nothing to review." *Id*. quoting *Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996).

Here, the analysis concerning Plaintiff's past relevant work as generally performed did not occur in the vocational expert's head.  At the hearing, the vocational expert testified that based on the ALJ's hypothetical, which mirrored

---

[8]Under the current version of the Federal Rules of Appellate Procedure, the appropriate citation would be to FED. R. APP. P. 28(a)(8)(A).

ORDER GRANTING DEFENDANT'S MOTION . . . - 22

the residual functional capacity determination for August 22, 2011, to October 31, 2012, and November 1, 2013, to the date of the decision, Plaintiff could perform the occupations of cook helper, rod tape operator, tractor trailer driver, "truck driver, light," and dump truck driver as described in the Dictionary of Occupational Titles (DOT).  Tr. 93-94.  Furthermore, the vocational expert agreed to clarify when her testimony was inconsistent with the DOT and did not testify to any such deviation occurring in regards to the above testimony.  Tr. 87-94. Considering the DOT is usually the best source for how a job is generally performed and the vocational expert's testimony did not vary from the DOT, the comparison between the requirements of Plaintiff's past relevant jobs as generally performed with the residual functional capacity determination did not occur solely in the vocational expert's head.  The DOT is available in print for Plaintiff to compare to the residual functional capacity determination.  Thus, the ALJ fulfilled her third factual finding.

Thus, the Court finds that the step four determination was free of error as to Plaintiff's ability to perform past relevant work as generally performed in the national economy.

**D.    Step Five**

Plaintiff argues the ALJ erred at step five because she relied on the vocational expert's testimony, which was based on an incomplete hypothetical. ECF No. 14 at 19-20.

A claimant's residual functional capacity is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a).  In formulating a residual functional capacity, the ALJ weighs medical and other source opinions and also considers the claimant's credibility and ability to perform daily activities.  *See*, *e.g.*, *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).  An ALJ is only required to present the VE with those limitations the ALJ finds to be credible and supported by the evidence.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-

66 (9th Cir. 2001).

Here, the ALJ presented her residual functional capacity determination to the vocational expert and the vocational expert identified jobs. Tr. 94-97. Considering this Court has already determined that the ALJ did not error in her treatment of the opinions of Dr. Moon, Dr. Kouzes, Dr. Sampson, and Mr. Carpenter, the ALJ's step five determination is without error.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS ORDERED:**

1.   Defendant's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

2.   Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED August 2, 2016.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE